## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SEASONAL SPECIALTIES, LLC,

                 Plaintiff,

        v.

HOLIDAY DESIGNS, LLC and
HOLIDAY DESIGNS (CAMBODIA)
CO. LTD.,

              Defendants.

No. 23-cv-14008

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

Plaintiff sued Defendants for infringement of U.S. Patent No. 9,554,437 (" '437 patent") and U.S. Patent No. 10,080,265 (" '265 patent") for the sale of decorative lighting on a pre-lighted Christmas tree (Dkt. 1.) Defendants now ask the Court, consistent with the *Markman* procedure, to construe the meaning of certain claims contained in both patents (Dkt. 46; Dkt. 50; Dkt. 53.) For the reasons that follow, the Court holds that the plain and ordinary meaning of the identified claims is controlling and that construction of those claims is therefore unnecessary.

## I.    CLAIM CONSTRUCTION STANDARD

The construction of a patent, "including terms of art within its claim, is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). The purpose of claim construction is to " 'determin[e] the meaning and scope of the patent claims asserted to be infringed.' " *O2 Micro Int'l Ltd.*

*v. Beyond Innovation Tech. Co., LTD.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996)). When the parties raise an "actual dispute" regarding the "proper scope of these claims, the court, not the jury, must resolve that dispute." *Id.* But only those terms in controversy need to be construed, and "only to the extent necessary to resolve the controversy." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

The fundamental principle of claim construction is to interpret claim terms according to their "ordinary and customary meaning" as understood by "a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005). To determine the ordinary and customary meaning, courts rely primarily on intrinsic evidence—the claims themselves, the specification, and the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The claims, including the context provided by surrounding terms, offer "substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. The specification plays a central role in the interpretive process and is regarded as "the single best guide to the meaning of a disputed term." *Id.* at 1315 (quoting *Vitronics Corp.*, 90 F.3d at 1582). However, although claims " 'must be read in view of the specification, of which they are a part[,]' . . . it is improper to read a limitation from the specification into the claims." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004)

(quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd 517 U.S. 370 (1996)).

There is a strong presumption that a claim term carries its ordinary and customary meaning. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). Courts may depart from the ordinary and customary meaning of a claim term only under two limited exceptions: explicit lexicography and clear and unmistakable disavowal. *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Vitronics Corp.*, 90 F.3d at 1580). First, the ordinary meaning may be overridden where the patentee "sets out a definition and acts as his own lexicographer." *Id.* To qualify as lexicography, the patentee must "clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning." *Id.* (internal quotation omitted). Second, a court may depart from ordinary meaning if the patentee "disavows the full scope of a claim term either in the specification or during prosecution." *Id.* Such disavowal must be unmistakable and specific, demonstrating a "clear intention to limit claim scope using 'words or expressions of manifest exclusion or restriction.' " *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004).

Courts may also consider extrinsic evidence, such as expert testimony, dictionaries, and technical treatises, to aid in understanding the technology or the meaning of terms. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005). However, while extrinsic evidence can provide useful context, "it must be considered in the context of the intrinsic evidence," and it may not be used to contradict or

override the meaning established by the patent's internal record. *Id.* at 1317–18. In particular, expert testimony may help explain underlying technical concepts or how a person of ordinary skill in the art might understand a term, but it "cannot be used to prove the proper or legal construction of the claim at issue." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331–32 (2015).

## II. ANALYSIS OF CLAIM TERMS

The disputed terms and each party's proposed construction can be summarized in the following chart:

| Claim Term | Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|---|
| "an illumination element" | "a single illumination element, such as a bulb or an LED, that must interact with both a first switching circuit and a second switching circuit." | Plain and ordinary meaning; no construction necessary. |
| "a first switching circuit … a second switching circuit" | Requires two different (distinct) switching circuits, each performing a distinct function | Plain and ordinary meaning; no construction necessary. In the alternative, does not require two physically separate circuits. |
| "first switching circuit" | A circuit that powers the illumination element, powers up in a steady-on state, and shifts to a special lighting effect only after that initial state. | Plain and ordinary meaning; no construction necessary. |
| "second switching circuit" | A circuit that interrupts current to the first circuit at a frequency that resets the first circuit to a steady-on mode before it can transition to special lighting effects. | Plain and ordinary meaning; no construction necessary. |

| "special lighting effect" | "an illumination of the illumination element in other than a steady ON state or mode." | Plain and ordinary meaning; no construction necessary. |
|---|---|---|
| "blinking" and "twinkling" | Indefinite under 35 U.S.C. § 112(b). | Plain and ordinary meaning; no construction necessary. |

> **A.** **Disputed Term #1: No construction is necessary for "an illumination element" because there appears to be no actual dispute about the scope of the claim; the ordinary and customary meaning of the claim is consistent with the parties' agreed interpretation; and Defendants' proposed construction would improperly narrow the claim.**

The term "an illumination element" appears in claim 1 of both U.S. Patent Nos. 9,554,437 ("the '437 patent") and 10,080,265 ("the '265 patent"). Defendants propose construing the term as "a single illumination element, such as a bulb or an LED, that must interact with both a first switching circuit and a second switching circuit." (Dkt. 46 at 6.) Plaintiff opposes this construction and contends that no construction is needed because the term should be given its plain and ordinary meaning, which already reflects the functional requirement described in the claim. (Dkt. 50 at 3.) As Plaintiff contends, because it appears there is no actual dispute and the ordinary and customary meaning of the claim controls, no judicial construction is this term is necessary.

Both parties agree on two key points: (1) case law has settled that the claim is not limited to a single illumination element; and (2) at least one illumination element must interact with both the first and second switching circuits. (*See* Dkt. 53 at 2; Dkt. 50 at 3; Dkt. 64 at 16–21.) The only point of disagreement is whether the term

requires elaboration to clarify that one element—not two separate ones—must perform the recited interactions. *Id*. Defendants rely on *Salazar v. AT&T Mobility LLC*, to argue that "an illumination element" must refer to a component that is capable of performing all the claimed functions—namely, interaction with both switching circuits. 64 F.4th 1311, 1317 (Fed. Cir. 2023). But the plain claim language already imposes that requirement. Claim 1 recites "an illumination element" and then references "said illumination element" in limitations describing interaction with both a first and a second switching circuit ('437 patent, col. 8:22–46). This claim structure mirrors that in *Salazar*, where the court held that, although "a microprocessor" does not mean only one, the subsequent references to "said microprocessor" require that at least one perform the entire set of functions. *Salazar*, 64 F.4th at 1317. There is no ambiguity or confusion in the claim text that would require judicial construction.

**B.   Disputed Term #2: Construction is unnecessary because the ordinary and customary meaning of the claim language "a first switching circuit . . . a second switching circuit" clearly requires two distinct switching circuits.**

The term "a first switching circuit . . . a second switching circuit" appears in claim 1 of both the '437 and '265 patents. Defendants contend that the language requires two different switching circuits, each performing a distinct function, and proposes that the Court construe the term to make that clear. (Dkt. 46 at 7.) Plaintiff responds that no construction is necessary, but it also argues in the alternative that, if construed, the term does not require two physically separate circuits. (Dkt. 50 at

4–5.) Construction of the term is unnecessary, however, because the ordinary and customary meaning of the claim language requires two distinct switching circuits.

Claims that "are not technical terms of art . . . do not require elaborate interpretation." *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001). Where a claim lists elements separately," 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention." *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) (quoting *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004)). In particular, the Federal Circuit has recognized that "[t]he use of the terms 'first' and 'second' is a common patent-law convention to distinguish between repeated instances of an element or limitation." *Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1348 (Fed. Cir. 2005) (internal quotation omitted).

Claim 1 recites "a first switching circuit in communication with said illumination element for controlling the flow of current to the element," and "a second switching circuit, configured to periodically interrupt the flow of current to said first circuit" ('437 patent, col. 8:24–27, 40–41). The plain language makes clear that the second circuit interacts with the first, which in turn controls the illumination element. These are distinct functional roles, and the claim structure distinguishes the two components both grammatically and logically. This reading is confirmed by the specification. The patents describe a system in which the first switching circuit includes a controller that generates a special illumination effect, while the second switching circuit interrupts current to the first at a timed interval, thereby resetting

7

the controller before the effect is displayed and producing a steady-on appearance. (*Id.*, col. 4:21–37; 6:45–53.) The circuits are described as performing separate roles, and there is no suggestion how both functions can be performed by a single circuit.

To be sure, nothing in this ruling requires the two circuits to be housed in separate hardware. Indeed, they may be implemented within a single package, printed circuit board, or integrated circuit, yet remain distinct claimed elements performing the separately recited functions ('437 patent, col. 6:45–53).

### C. Disputed Terms #3 and #4: No construction is necessary for "first switching circuit" or "second switching circuit" because the parties do not have an actual dispute over the meaning of the terms, and the claim language is clear.

The terms "first switching circuit" and "second switching circuit" appear in claim 1 of both the '437 and '265 patents. Defendants propose express constructions that track claim language but add paraphrased functional limitations to clarify the purpose of each circuit. Defendants define the "first switching circuit" as one that powers the illumination element, powers up in a steady-on state, and shifts to a special lighting effect only after that initial state. (Dkt. 46 at 12–14.) The "second switching circuit" is described as one that interrupts current to the first circuit at a frequency that resets the first circuit to a steady-on mode before it can transition to special lighting effects. (*Id.* at 15–17.) Plaintiff responds that both terms should be given their plain and ordinary meaning and argues that Defendants' proposed constructions merely paraphrase or reword the claim text without resolving any real ambiguity. (Dkt. 50 at 5–6; Dkt. 64 at 31–33.)

Plaintiff is correct. The parties do not appear to have an actual disagreement about what each term means in technical or functional terms. (Dkt. 64 at 30–39.) The dispute is not over what each switching circuit does, but whether that understanding should be codified in rewritten definitions or left to the claim language itself. *Id.* Defendants argue that construction is needed to clarify that the first circuit must begin in a steady-on state, and that the second circuit must reset the first before it switches to special lighting effects. But these features are already set forth in the claim itself, which requires no further elaboration.

As the Federal Circuit has held, "the context in which a term is used in the asserted claim can be highly instructive," and where the claim "itself provides a clear meaning," construction may be unnecessary. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc). Claim construction "is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). When there are no disputed meanings or technical scope, trial judges need not "repeat or restate every claim term." *Id.*

Claim 1's language already describes the required structure and function of each circuit. The "first switching circuit" is defined as being in communication with the illumination element and "containing a controller . . . to produce a predetermined special illumination visual lighting effect," and one that "initiates said lighting effect when powered up starting from an initial steady-on illuminated state . . . and then proceeding to other special lighting effects. . . ." ('437 patent, col. 8:24–30.) The "second switching circuit" is defined as "configured to periodically interrupt the flow

9

of current to said first circuit, at an interruption frequency sufficient to cause the first circuit to reset to its on state without proceeding to said other special lighting effects." (*Id.*, col. 8:40–45.).

The parties do not appear to disagree about what each term means in technical or functional terms. (Dkt. 64 at 30–39.) Their dispute is not over what each switching circuit does, but whether that understanding should be codified in rewritten definitions or left to the claim language itself. *Id.* Defendants argue that construction is needed to clarify that the first circuit must begin in a steady-on state, and that the second circuit must reset the first before it switches to special lighting effects. But these features are already set forth in the claim itself, which requires no further elaboration.

**D. Disputed Term #5: Construction is unnecessary because the claim language clearly defines the term; the parties do not appear to disagree over its meaning; and Defendants' proposed construction would improperly add narrowing language not supported by the intrinsic record.**

The term "special lighting effect" appears in claim 1 of the '437 patent and the '265 patent. Defendants propose construing the term as: "an illumination of the illumination element in other than a steady ON state or mode." (Dkt. 46 at 15.) Plaintiff maintains that no construction is necessary and that the term should be given its plain and ordinary meaning, which is already reflected in the claim language and specification. (Dkt. 50 at 7–8.)

The claim itself expressly defines the functional contrast: the illumination element switches between "having [the] visual appearance of steady-on" and a "visual

10

appearance of a predetermined special visual function." ('437 patent, col. 8:21–24.) The specification elaborates that the "first switching circuit" initiates a lighting effect "starting from an initial steady on illuminated state" and then proceeds to "special lighting effects" that are "periodically repeated." (*Id.*, col. 4: 31–36.) The contrast between "steady ON" and "special lighting effect" is intrinsic to the patent's operation and clearly understood by a person of ordinary skill in the art.

Both parties agree that a "special lighting effect" refers to a lighting condition that is not a visibly steady ON state. (Dkt. 64 at 35–37.) Defendants instead emphasize their concern that a jury may need clarification on that distinction. *Id.* But the proposed construction—"an illumination of the illumination element in other than a steady ON state or mode"—offers no greater clarity than the claim language and may introduce unnecessary confusion by implying that any deviation from a steady current is a "special lighting effect." It also risks excluding embodiments where the lighting may include undetectable flicker, which the specification explains still qualifies as "steady ON" from the perspective of the human eye. (*See* '437 patent, col. 4: 44–48) ("a plurality of steady on illumination pulses . . . the user will see a substantially steady light").

### E. Disputed Term #6: The terms "blinking" and "twinkling" are not indefinite and do not require construction, because they are commonly understood lighting effects described in the specification.

A patent claim is indefinite under 35 U.S.C. § 112(b) if, "read in light of the specification and the prosecution history, [it] fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v.*

11

*Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). This standard reflects a "delicate balance" between the inherent imprecision of language and the public notice function of patent claims: claims must be "precise enough to afford clear notice of what is claimed" while recognizing that "absolute precision is unattainable." *Id.* at 910. The certainty which patent law requires "is not greater than is reasonable, having regard to their subject-matter." *Id.* (quoting *Minerals Separation, Ltd. v. Hyde*, 242 U.S. 261, 270 (1916) (internal quotation marks omitted)).

Defendants contend that the terms "blinking" and "twinkling" are indefinite because the patent fails to provide "objective boundaries" to differentiate one effect from the other and allegedly uses the terms inconsistently, and because inventor Altamura could not provide a technical definition in his deposition. (Dkt. 46 at 17–18.) Plaintiff responds that the terms are used according to their plain meanings as visual lighting effects that are familiar both in the art and to ordinary observers and are further illustrated in the specification. (Dkt. 50 at 9–10.)

In this case, the intrinsic evidence provides ample clarity. The specification expressly lists "blinking" and "twinkling" as examples of "predetermined special illumination visual lighting effects," along with "fading in and out" and other sequences. ('437 patent, col. 4:28–36.). Indeed, "blinking" is used in claim 7 and "twinkling" in claim 6 of the '437 patent as distinct embodiments, and the specification supports the interpretation that blinking involves regular on-off cycling while twinkling involves varied or gradual changes in brightness or frequency. (*Id.*,

col. 1:62–67.) This context is sufficient to inform a skilled artisan of the scope of each term.

Because the terms "blinking" and "twinkling" are used in their ordinary sense and are already illustrated by the patent, construction is unnecessary. The patent does not assign them any special definition or act as its own lexicographer. Nor does the prosecution history suggest any disavowal of scope. To the extent the Court determines construction is necessary to assist the jury, Plaintiff's proposed construction may be adopted as they align with plain understanding and consistent with the specification.

## III.    CONCLUSION

For the foregoing reasons, the Court resolves the disputed terms and holds that the plain and ordinary meaning of the claim language controls, and the construction of the patents claims described above is unnecessary.

SO ORDERED in No. 23-cv-14008.

Date: December 22, 2025

JOHN F. KNESS
United States District Judge

13